# United States Bankruptcy Appellate Panel
## For the Eighth Circuit

_____

No. 12-6063

_____

In re: James C. Schlehuber, also known as Jim Schlehuber, Formerly doing business as J.R.G., L.L.C., Formerly doing business as The Radar & Riley Limited Partnership, Formerly doing business as March Plan Investments, L.L.C., Formerly doing business as Rockford Omaha, L.L.C., Formerly doing business as January Real Group, L.L.C.

*Debtor*

-------------------------------

James C. Schlehuber

*Debtor - Appellant*

v.

Fremont National Bank & Trust Company

*Creditor - Appellee*

Nancy J. Gargula

*U.S. Trustee - Appellee*

United States of America

*Intervenor - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Nebraska - Omaha

Submitted: March 7, 2013
Filed: April 9, 2013
_____

Before SCHERMER, NAIL and SHODEEN, Bankruptcy Judges.

SCHERMER, Bankruptcy Judge

James C. Schlehuber (the "Debtor") appeals from the order of the bankruptcy court[1] converting his Chapter 7 bankruptcy case to a case under Chapter 11, pursuant to § 706(b) of Title 11 of the United States Code (the "Bankruptcy Code"). We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

## ISSUE

The issue in this appeal is whether the bankruptcy court abused its discretion when, without the consent of the Debtor, it converted the Debtor's Chapter 7 bankruptcy case to a case under Chapter 11 pursuant to Bankruptcy Code § 706(b).

## BACKGROUND

In January 2012, the Debtor and his wife filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor and his wife filed their bankruptcy schedules and Statement of Financial Affairs the same day. Their debts were primarily business debts.

The schedules filed on the petition date revealed that the Debtor and his wife had a significant income each year, the great majority of which was attributable to the Debtor's earnings. The schedules also showed a substantial monthly surplus.

---

[1]   The Honorable Thomas L. Saladino, Chief Judge, United States Bankruptcy Court for the District of Nebraska.

Fremont National Bank & Trust Company (the "Bank"), an unsecured creditor, filed a motion seeking to convert the Debtor's and his wife's Chapter 7 case to a case under Chapter 11 under Bankruptcy Code §706(b).

Following the Bank's filing of its § 706(b) motion, the Debtor and his wife amended their schedules. The amended schedules showed that the Debtor and his wife were separated and that they maintained separate households. The Debtor decreased the amount of his monthly income, increased the amount of his monthly expenses, and claimed to have no monthly disposable income. The Debtor also filed a resistance to the Bank's motion to convert.[2]

In October 2012, the bankruptcy court held a hearing on the Bank's § 706(b) motion. The Bank maintained that conversion was in the best interest of all parties because the Debtor had significant income with which to fund a Chapter 11 plan and the Debtor would be able to rehabilitate his affairs through a Chapter 11 plan. The U.S. Trustee joined in support of the Bank's request to convert the Debtor's case.

The Bank introduced the Debtor's earning statements through mid-June 2012 and the Debtor's tax documents for 2009 through 2011. The average monthly income derived from the Debtor's June 15, 2012 year-to-date earnings statement is greater than the amount disclosed on his amended schedule of income. The average monthly income derived from the Debtor's 2009, 2010, and 2011 W-2 forms is less than that derived from his June 15, 2012 year-to-date earnings statement, but it, too, is greater than the amount disclosed on his amended schedule of income. With either average monthly income, after allowance is made for the expenses listed on his amended schedule of expenses, the Debtor would have significant monthly disposable income.

---

[2] In addition, the Debtor challenged the constitutionality of Bankruptcy Code §§ 1115(a)(2), 1127(e) and 1129(a)(15). The constitutional issues were not raised on appeal and are deemed abandoned.

3

The Debtor submitted into evidence his affidavit. In his affidavit, the Debtor states that in 2011 he left his then current employment and began working for another company. In 2011 he obtained a one-time bonus and had a low sales quota, but in 2012 his sales quota was increased, decreasing his chance of obtaining "sales commission accelerators." According to the Debtor his "income varies uncontrollably and [his] bonuses are not guaranteed." The Debtor also stated that he was required to pay an additional sum of money to his estranged wife monthly.

Various arguments were made at the hearing regarding why the case should not be converted, including that the Debtor and his wife wanted to discharge their debt and obtain their fresh start, they would not voluntarily commit their post-petition earnings to a Chapter 11 plan, conversion would not promote rehabilitation of their financial affairs or reorganization of their business because there was no business to reorganize, and that conversion under § 706(b) based on the arguments of the Bank and the U.S. Trustee would be an end run around § 707(b)'s requirement that a debtor have primarily consumer debt. The Debtor represented that his income varied, the amount of his income from the original schedules was not an accurate picture of the Debtor's income looking forward, the amended schedules were filed based on projections of the Debtor's income looking forward, and the Debtor and his wife had substantially no income producing assets with which to fund a plan.

Although the Debtor and his wife filed a joint voluntary bankruptcy petition, the bankruptcy court only converted the Debtor's case to one under Chapter 11, and only the Debtor appeals.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed *de novo*. *Willis v. Rice (In re Willis)*, 345 B.R. 647, 650-51 (B.A.P. 8th Cir. 2006). We review the conversion of a Chapter 7 case to Chapter 11 under Bankruptcy Code § 706(b) for an abuse of discretion. *Id.* at 654.

"The bankruptcy court abuses its discretion when it fails to apply the proper legal standard or bases its order on findings of fact that are clearly erroneous." *Lovald v. Tennyson (In re Wolk),* 686 F.3d 938, 939 (8th Cir. 2012) (citation omitted).

## DISCUSSION

### A.    11 U.S.C. § 706(b)

Bankruptcy Code § 706(b) provides that "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time."  11 U.S.C. § 706(b).

As this panel noted previously, "[t]he decision whether to convert [under § 706(b)] is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest." *Willis*, 345 B.R. 647 at 654 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong.2d Sess. at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787)) (internal quotation marks omitted).  Section 706(b) does not provide guidance regarding the factors a court should consider. *In re Quinn*, ___ B.R. ___, 2012 WL 6737484, at *10 (Bankr. D. N.M. Dec. 28, 2012).  "Since there are no specific grounds for conversion, a court 'should consider anything relevant that would further the goals of the Bankruptcy Code.' " *Proudfoot Consulting Co. v. Gordon (In re Gordon)*, 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012) (quoting *In re Lobera*, 454 B.R. 824, 854 (Bankr. D.N.M. 2011)).

After a hearing at which arguments were made by the Debtors, the Bank, and the U.S. Trustee,[3] the bankruptcy court exercised its discretion under § 706(b) and granted the Bank's motion to convert the Debtor's case to Chapter 11.  In doing so,

---

[3]    The United States of America also appeared and made an argument about the constitutional issue that is not before us on appeal.

5

it determined that, based on the evidence, the Debtor's income had historically been "very substantial." The court stated that "the ability to pay is far and away an important factor under [§] 706(b)," and it recognized that the Debtor would have the choice in Chapter 11 to make payments under a plan and receive a discharge. The Debtor's ability to fund a Chapter 11 plan if he chooses to do so was certainly an important and relevant consideration. *See* 11 U.S.C. §§ 1115(a)(2) (property of estate includes post-petition earnings of individual debtor); 1127(e) (plan may be modified post-confirmation); 1129(a)(15) (individual debtor to dedicate projected disposable income to plan under certain circumstances).

The bankruptcy court's decision was supported by the record and was clearly within its discretion.

**B.  Notwithstanding the Debtor's arguments, the bankruptcy court acted within its discretion under § 706(b).**

The Debtor makes arguments against conversion of his case, none of which convince us that the bankruptcy court abused its discretion.

**1.  It is irrelevant that the Debtor was an individual with primarily non-consumer debts.**

The Debtor takes the position that conversion of his case to one under Chapter 11 served as an end run around § 707(b)'s requirement that an individual debtor have primarily consumer debts. According to the Debtor, arguments made by the Bank and the U.S. Trustee in favor of conversion (asserting the Debtor's ability to pay) "strongly resemble" those made in cases alleging an abuse of the provisions of Chapter 7 under Bankruptcy Code § 707(b). The Debtor maintains that because ability to pay is considered under § 707(b) (which section applies only to a debtor with primarily consumer debts), the case of an individual debtor with primarily business debt should not be converted to Chapter 11 based on his ability to pay.

6

We see no basis for imposing the limit requested by the Debtor on the conversion of his case; the bankruptcy court did not err in its decision. Nothing in § 706(b) suggests that a court may not focus on ability to pay under that section where the Debtor is an individual with primarily business debts. 11 U.S.C. § 706(b). And, ability to pay was logically a central consideration under § 706(b) in light of the fact that confirmation of a plan is a goal in Chapter 11.

The case relied upon by the Debtor in its brief for his position that the bankruptcy court improperly focused on his ability to pay, *In re Ryan*, 267 B.R. 635 (Bankr. N.D. Iowa 2001), is not binding on us (or the bankruptcy court) and is distinguishable. To the extent *Ryan* could be read to apply to the facts of this case, we disagree with it. The *Ryan* court disallowed an unsecured creditor's request to convert a debtor's Chapter 7 case to Chapter 11 under § 706(b) based on the debtor's ability to pay. *Id.* When *Ryan* was decided, the law did not provide a creditor with standing to seek dismissal under § 707(b) and, although the earlier version of § 707(b) applied, the parties with standing had not sought dismissal.[4] *Id.* at 639. In addition to seeking conversion under § 706(b), the *Ryan* creditor asked the court (as his preferred remedy) to issue a *sua sponte* order dismissing the debtor's case under § 707(b). *Id.* at 638. The court characterized the creditor's § 706(b) request as a disguised § 707(b) motion to dismiss. *Id.* at 639.

The Bank sought relief under §706(b) because that is a provision under which a creditor may seek to convert a case to Chapter 11 without the Debtor's consent, not because the Bank was trying to circumvent another Bankruptcy Code provision. And, just as the bankruptcy court's decision in *Ryan* was made as an exercise of its

---

[4] When *Ryan* was decided, § 707(b) provided only for dismissal, not for conversion to Chapter 11, as is now allowed by that statute.

7

discretion, it was within the bankruptcy court's discretion to convert the Debtor's case here.

## 2. The bankruptcy court acted within its discretion when it assessed the evidence and determined conversion was warranted.

The Debtor also submits that the bankruptcy court's ruling was erroneous because the court allegedly looked only to the interests of the creditors (*i.e.*, the Debtor's ability to pay) and failed to consider the interests of the Debtor or those who depend on him for support. Noting his desire to discharge his debts and obtain a fresh start, the Debtor makes several of the same arguments he made before the bankruptcy court. The Debtor maintains that he has no disposable income from his services or income producing assets with which to fund a plan, and has no business to reorganize because the business property was surrendered to the secured creditors. The Debtor is not willing to voluntarily commit his post-petition earnings to a Chapter 11 plan. He states that requiring him to fund a Chapter 11 plan would not allow him to rehabilitate his finances and, instead, would harm him.

We disagree with the Debtor's position. As an initial matter, the bankruptcy court assessed the evidence presented to it and found that the Debtor had the ability to fund a Chapter 11 plan. The bankruptcy court's determination was supported by the record, and we will not second guess it. And, it is not necessary that a Chapter 11 debtor be engaged in business to reorganize. *Toibb v. Radloff,* 501 U.S. 157, 166 (1991) ("[Bankruptcy] Code contains no 'ongoing business' requirement for Chapter 11 reorganization").

As support for his argument that the bankruptcy court erred by not considering his interests, the Debtor cites legislative history (also cited by this panel in *Willis*, 345 B.R. at 654) stating the court's decision to convert under § 706(b) "is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in

interest." H.R.Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; S.Rep. No. 989, 95th Cong.2d Sess. at 94 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787). However, reduced to its core, the Debtor's position amounts to an argument that his interests (or desires) should be paramount to those of his creditors. But, the bankruptcy court acted within its discretion by determining that the Debtor's ability to pay was "far and away an important factor under [§] 706(b)," and converting the case to Chapter 11. The Debtor argued why he believed that conversion was not in his best interest or that of his dependents. The Bank maintained that if the case was converted to Chapter 11, the Debtor could rehabilitate his financial affairs, and it submitted that conversion was in the interest of all parties. It is clear from the record as a whole that the bankruptcy court necessarily considered these arguments. And, it recognized that the Debtor would have the choice in a Chapter 11 case to make plan payments and obtain a Chapter 11 discharge.[5]

Contrary to the Debtor's apparent belief, nothing in § 706(b) states that an individual debtor's interest should control whether his case is converted to Chapter 11. 11 U.S.C. § 706(b); *see also* 11 U.S.C. § 303(b) (involuntary Chapter 11 case allowed against individual). Moreover, no argument made or case cited by the Debtor convinces us that the interests of the Debtor should have governed the bankruptcy court's decision, or that ability to pay was not the most important consideration. Rather, we hold that the bankruptcy court's decision was consistent with the statute, supported by the record, and properly made within its discretion. *See e.g., Willis*, 345 B.R. at 655 (affirming denial of individual debtor's request to convert from Chapter 7 to Chapter 11 under § 706(b) based on debtor's "fraudulent, evasive, and

---

[5] The U.S. Trustee submits that, based on the unambiguously plain language of § 706(b) (negating any need to look at the legislative history), a court is not required to make any particular findings or to balance any interests. Because we hold that the bankruptcy court acted within its discretion here, we do not opine regarding what a court must consider in other cases under § 706(b) to avoid abusing its discretion.

uncooperative behavior"); *see also Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp*.)*, 844 F.2d 1142, 1161 (5th Cir. 1988) (affirming conversion of individual debtor's case to Chapter 11 under § 706(b) where bankruptcy court found primary purpose of debtor's previous conversion to Chapter 7 was to interfere with Chapter 11 reorganization of debtor and other debtors).

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court is AFFIRMED.